1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT LEE JENKINS, JR.,                    No.  2:13-cv-0596 KJM AC P

12              Plaintiff,

13        v.                                      FINDINGS AND RECOMMENDATIONS

14   RON BARNES, Warden, et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18   action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendant Miranda's motion for

19   summary judgment.

20        I.      Factual and Procedural Background

21        This action proceeds against R. Miranda, the sole remaining defendant, on the second

22   amended complaint filed September 2, 2013.[1]  ECF No. 11.  The complaint alleges that plaintiff

23   was transferred on December 5, 2011 to High Desert State Prison (HDSP), where defendant

24   Miranda was employed as a physician's assistant.  ECF No. 11 at 15-16.  Upon plaintiff's arrival

25   at HDSP, defendant confiscated plaintiff's cane, back brace, and Gabapentin medication, which

26

27   _____
     [1]  Since plaintiff is proceeding pro se, he is afforded the benefit of the prison mailbox rule.  See
     Houston v. Lack, 487 U.S. 266, 276 (1988).

28

                                            1

1    had previously been prescribed by doctors at two other prisons.  Id. at 15-16.  As a result of

2    defendant's actions, plaintiff was in "constant pain" for one year.  Id. at 16.

3           On December 19, 2014, plaintiff filed a motion requesting that the court attach additional

4    exhibits to his second amended complaint.  See ECF No. 47.  Plaintiff thereafter filed a motion

5    for appointment of an expert witness, ECF No. 57, a motion for appointment of counsel, ECF No.

6    56, and various motions for injunctive relief, ECF Nos. 46, 50, 63.

7           On May 6, 2015, defendant Miranda filed the instant motion for summary judgment.  ECF

8    No. 58.  Plaintiff filed "objections" to the summary judgment motion, ECF No. 61, and defendant

9    filed a response, ECF No. 62.  On August 28, 2015, the undersigned denied plaintiff's requests

10   for an expert witness, appointment of counsel, and injunctive relief, and granted plaintiff's

11   request to add additional exhibits to his second amended complaint.  ECF No. 64.

12          II.     Defendant's Motion for Summary Judgment

13                  A.  Defendant's Argument

14          Defendant Miranda argues that summary judgment is appropriate because he was not

15   deliberately indifferent to plaintiff's serious medical needs when he changed plaintiff's pain

16   medication and discontinued plaintiff's medical devices on December 5, 2011.  ECF No. 58.  In

17   the alternative, defendant argues he is entitled to qualified immunity.  Id.

18          With respect plaintiff's pain medication, defendant asserts that at the time he saw plaintiff

19   on December 5, 2011, Gabapentin had been removed from the pharmacy drug formulary

20   statewide and was no longer on the list of approved medications for medical providers to

21   prescribe.  ECF No. 58 at 25.  All prescriptions for Gabapentin required non-formulary approval

22   and were restricted to adjunctive therapy for partial complex seizures, post herpetic neuralgia, and

23   objective evidence of severe disease.  Id.  Accordingly, when new patients arrived at HDSP with

24   current prescriptions for Gabapentin, HDSP medical staff usually tapered them off Gabapentin

25   and prescribed an alternate medication, unless they met one of the conditions for which

26   Gabapentin could be prescribed.  Id.  Because defendant determined that plaintiff did not meet

27   any of the conditions for which Gabapentin could be prescribed, defendant could not prescribe

28   plaintiff Gabapentin.  Id. at 25-26.  Defendant offered plaintiff Oxcarbazepine as a formulary

1   alternative but plaintiff refused, so defendant tapered off Gabapentin and instead prescribed

2   Naproxen and Acetaminophen.  Defendant contends that summary judgment is appropriate

3   because there is no evidence that he acted with deliberate indifference when he replaced

4   plaintiff's non-formulary Gabapentin with formulary drug alternates in compliance with CDCR

5   and HDSP policies.  Id. at 26.

6          As to plaintiff's cane and back brace, defendant asserts that he determined based on his

7   review of plaintiff's medical files and his observations of plaintiff that neither device was

8   medically necessary for plaintiff.  ECF No. 58 at 16.  Because medical providers in the CDCR

9   system are not permitted to order medical devices unless they are "medically necessary supported

10  by objective medical evidence," defendant discontinued the chrono for plaintiff's cane and back

11  brace.  Id.

12         In support of his motion for summary judgment, defendant provides his own declaration

13  as well as the declarations of Dr. Pomazal and Dr. Lee, who both opine that in their professional

14  medical judgment, defendant's treatment of plaintiff on December 5, 2011 was medically

15  acceptable.  See ECF No. 58-2.

16                B. Plaintiff's Opposition

17         In opposition to defendant's summary judgment motion, plaintiff submitted a document

18  entitled "Plaintiff's Objections to Defendants [sic] Evidence in Support of Motion for Summary

19  Judgment."  ECF No. 61.  At the outset, the court notes that plaintiff has failed to comply with

20  Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . .

21  is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

22  record . . . ."  Plaintiff has also failed to file a separate statement of disputed facts, as required by

23  Local Rule 260(b).

24         It is well-established that the pleadings of pro se litigants are held to "less stringent

25  standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972)

26  (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that

27  govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on another

28  ground by Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc).  However, the

1     unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are

2     subject to the "handicaps . . . detention necessarily imposes upon a litigant," such as "limited

3     access to legal materials" as well as "sources of proof."  Jacobsen v. Filler, 790 F.2d 1362,

4     1364-65 & n.4 (9th Cir. 1986).  Inmate litigants, therefore, should not be held to a standard of

5     "strict literalness" with respect to the requirements of the summary judgment rule.  Id.

6           The court is mindful of the Ninth Circuit's more overarching caution in this context, as

7     noted above, that district courts are to "construe liberally motion papers and pleadings filed by

8     pro se inmates and . . . avoid applying summary judgment rules strictly."  Ponder, 611 F.3d

9     at 1150.  Accordingly, the court considers the record before it in its entirety despite plaintiff's

10    failure to be in strict compliance with the applicable rules.  However, only those assertions in the

11    opposition which have evidentiary support will be considered.

12           In opposition, plaintiff contends that the "new" policy regarding Gabapentin was not

13    grounds to discontinue plaintiff's prescription because when plaintiff arrived at HDSP, he already

14    had non-formulary approval for Gabapentin, authorized and approved by his primary care

15    physician, a pain committee, and the Chief Physician and Surgeon at Folsom State Prison.  ECF

16    No. 61 at 3, 6.  Plaintiff appears to assert that defendant lacked the authority to discontinue

17    plaintiff's Gabapentin prescription because it was authorized by a pain committee.[2]  See id. at 3.

18    Plaintiff asserts that he informed defendant he had been prescribed non-formulary Gabapentin

19    because other medications caused him side effects, but defendant refused to listen because he had

20    already made up his mind to discontinue plaintiff's Gabapentin as a matter of policy.  Id. at 4, 6,

21    8.  Plaintiff admits he declined defendant's offer of Oxcarbazepine, but asserts that when plaintiff

22    later tried Oxcarbazepine, it made him very sick.  ECF No. 61 at 8-9.

23           As to his cane and back brace, plaintiff asserts that it was difficult for him to walk without

24    his cane and that he is "not sure" how defendant came to the conclusion that plaintiff could

25    ambulate, sit, or stand on his own without problems.  ECF No. 61 at 8.  Plaintiff asserts that he

26

27    [2]  Although it is not entirely clear, plaintiff also appears to assert that defendant either failed to follow the policies outlined in California Code of Regulations, title 15, sections 3350 (provision of medical care and definitions) and 3355(b) (healthcare examinations and transfer of prisoners),

28    or was authorized to prescribe Gabapentin pursuant to these policies.  See id. at 2, 3, 6, 11.

1   tried to explain to defendant that his leg pain worsens as he walks, but defendant ignored him and

2   instead ordered x-rays of plaintiff's knees, even though plaintiff had never complained of knee

3   pain.  Id. at 7.  Plaintiff alleges that defendant laughed at plaintiff, told another officer plaintiff

4   was faking his injuries, and improperly stated in a report that plaintiff had turned in his cane

5   voluntarily.  Id. at 11-12.

6        In support of his opposition to defendant's summary judgment motion, plaintiff submits a

7   number of exhibits, including medical records, health care appeals, and the declaration of Vincent

8   Cofield, an inmate who was incarcerated at HDSP in March 2012.  See ECF No. 61 at 13-51.

9            C.  Defendant's Reply

10       In reply, defendant argues that plaintiff has no evidence to support his claim that

11  defendant lacked the authority to change plaintiff's Gabapentin prescription.  ECF No. 62 at 2.

12  As to plaintiff's assertion that he had a prescription for non-formulary Gabapentin from another

13  physician, defendant reiterates that CDCR instituted a new policy regarding Gabapentin in 2011,

14  and that plaintiff did not meet any of the criteria for administration of Gabapentin under CDCR's

15  new policy.  Id. at 3.  Defendant contends that by offering plaintiff Oxcarbazepine as a first

16  choice alternative to Gabapentin, and prescribing Naproxen and Acetaminophen after plaintiff

17  refused Oxcarbazepine, defendant made a good faith effort to provide treatment to plaintiff and

18  was not deliberately indifferent to plaintiff's serious medical needs.  Id. at 6.  To the extent

19  plaintiff asserts that he tried Oxcarbazepine *after* December 5, 2011 and it made him sick,

20  defendant argues that plaintiff's objections are misplaced because the instant case is about

21  defendant's actions on December 5, 2011, the only time plaintiff saw defendant.  Id. at 5.

22       Defendant also challenges plaintiff's assertion that he had not previously complained of

23  knee pain, and contends that plaintiff's medical records reflect complaints of knee pain in 2007

24  and 2011.[3]  ECF No. 62 at 4.  Defendant asserts that his decision to order x-rays of plaintiff's

25  knees, in addition to ordering blood pressure medication for plaintiff's hypertension, is evidence

26  that he attempted to provide medical care for plaintiff and was not deliberately indifferent to

27

28  [3]  In reply, defendant submitted additional documentation regarding plaintiff's knee pain as
    Exhibit F.  See ECF No. 62-1.

1   plaintiff's needs.  Id. at 4-5.  Defendant also objects to plaintiff's Exhibit C, the declaration of

2   Vincent Cofield.  Id. at 11.

3       III.     Legal Standard for Summary Judgment

4          Summary judgment is appropriate when the moving party "shows that there is no genuine

5   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

6   Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

7   proving the absence of a genuine issue of material fact."  Nursing Home Pension Fund, Local 144

8   v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

9   (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish

10   this by "citing to particular parts of materials in the record, including depositions, documents,

11   electronically stored information, affidavits or declarations, stipulations (including those made for

12   purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

13   that such materials "do not establish the absence or presence of a genuine dispute, or that the

14   adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ.

15   P. 56(c)(1)(A), (B).

16          When the non-moving party bears the burden of proof at trial, "the moving party need

17   only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

18   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

19   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

20   against a party who fails to make a showing sufficient to establish the existence of an element

21   essential to that party's case, and on which that party will bear the burden of proof at trial.  See

22   Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

23   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

24   circumstance, summary judgment should be granted, "so long as whatever is before the district

25   court demonstrates that the standard for entry of summary judgment ... is satisfied."  Id. at 323.

26          If the moving party meets its initial responsibility, the burden then shifts to the opposing

27   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

28   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

1    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

2    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

3    admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

4    Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  Moreover, "[a] Plaintiff's verified complaint

5    may be considered as an affidavit in opposition to summary judgment if it is based on personal

6    knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122,

7    1132 n.14 (9th Cir. 2000) (en banc).[4]

8         The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

9    might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,

10   Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809

11   F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a

12   reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers,

13   Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

14        In the endeavor to establish the existence of a factual dispute, the opposing party need not

15   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

16   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

17   trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

18   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

19   Matsushita, 475 U .S. at 587 (citations omitted).

20        "In evaluating the evidence to determine whether there is a genuine issue of fact," the

21   court draws "all reasonable inferences supported by the evidence in favor of the non-moving

22   party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per

23   curiam).  It is the opposing party's obligation to produce a factual predicate from which the

24   inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45

25   (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine

26   issue, the opposing party "must do more than simply show that there is some metaphysical doubt

27

28   [4]  Plaintiff filed a verified Second Amended Complaint in this case.  See ECF No. 11.

1  as to the material facts. …   Where the record taken as a whole could not lead a rational trier of

2  fact to find for the nonmoving party, there is no 'genuine issue for trial.'"   <u>Matsushita</u>, 475 U.S. at

3  587 (citation omitted).

4         In applying these rules, district courts must "construe liberally motion papers and

5  pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."

6  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly

7  support an assertion of fact or fails to properly address another party's assertion of fact, as

8  required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion

9  …." Fed. R. Civ. P. 56(e)(2).

10     IV.     <u>Legal Standard for Eighth Amendment Claim</u>

11        In order to state a §1983 claim for violation of the Eighth Amendment based on

12  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

13  deliberate indifference to serious medical needs."   <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).

14  To prevail, plaintiff must show both that his medical needs were objectively serious, and that

15  defendants possessed a sufficiently culpable state of mind.   <u>Wilson v. Seiter</u>, 501 U.S. 294, 299

16  (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853, 854 (9th Cir. 1992) (on remand).  The requisite

17  state of mind for a medical claim is "deliberate indifference."   <u>Hudson v. McMillian</u>, 503 U.S. 1,

18  5 (1992).

19        A serious medical need exists if the failure to treat a prisoner's condition could result in

20  further significant injury or the unnecessary and wanton infliction of pain.  Indications that a

21  prisoner has a serious need for medical treatment are the following: the existence of an injury that

22  a reasonable doctor or patient would find important and worthy of comment or treatment; the

23  presence of a medical condition that significantly affects an individual's daily activities; or the

24  existence of chronic and substantial pain.   <u>See, e.g.</u>, <u>Wood v. Housewright</u>, 900 F.2d 1332, 1337-

25  41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01 (9th Cir. 1989).

26  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, <u>WMX</u>

27  <u>Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

28  ////

1    In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court established a very

2    demanding standard for "deliberate indifference."  Negligence is insufficient.  <u>Farmer</u>, 511 U.S.

3    at 835.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

4    which is so obvious that it should be known) is insufficient to establish an Eighth Amendment

5    violation.  <u>Id</u>. at 836-37.  It not enough that a reasonable person would have known of the risk or

6    that a defendant should have known of the risk.  <u>Id</u>. at 842.  Rather, deliberate indifference is

7    established only where the defendant subjectively "knows of and disregards an excessive risk to

8    inmate health and safety."  <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal

9    citation omitted).  Deliberate indifference can be established "by showing (a) a purposeful act or

10   failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

11   indifference."  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).

12   A physician need not fail to treat an inmate altogether in order to violate that inmate's

13   Eighth Amendment rights.  <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir.1989).  A

14   failure to *competently* treat a serious medical condition, even if some treatment is prescribed, may

15   constitute deliberate indifference in a particular case.  <u>Id</u>.  However, "[a] difference of opinion

16   between a physician and the prisoner – or between medical professionals – concerning what

17   medical care is appropriate does not [without more] amount to deliberate of indifference."  <u>Snow</u>

18   <u>v. McDaniel</u>, 681 F.3d 978, 987 (9th Cir. 2012), <u>overruled on other grounds</u>, <u>Peralta v. Dillard</u>,

19   744 F.3d 1076, 1083 (9th Cir. 2014).  To establish that the difference of opinion rises to the level

20   of deliberate indifference, a prisoner must show that the defendant's chosen course of treatment

21   was medically unacceptable and in conscious disregard of an excessive risk to plaintiff's health.

22   <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996).  Furthermore, in cases involving complex

23   medical issues where plaintiff contests the type of treatment he received, expert opinion will

24   almost always be necessary to establish the necessary level of deliberate indifference.

25   <u>Hutchinson v. United States</u>, 838 F.2d 390 (9th Cir.1988).

26   V.    <u>Undisputed Facts</u>

27   • Plaintiff suffers from chronic low back pain and degenerative disk disease. ECF No. 61 at

28     15-16.  In 2008, plaintiff had a CT scan of his lumbar spine showing moderate to severe

9

central spinal stenosis and a bullet fragment in the soft tissue near his spine from an old gunshot wound. Id., ECF No. 11 at 40, 47-48. A note in plaintiff's medical file indicates that as of August 27, 2008, plaintiff was taking Gabapentin and Naproxen and suffered from a pinched nerve and low back pain. See ECF No. 11 at 41. On September 2, 2010, a physician noted "mild degenerative changes" in plaintiff's lower lumbar spine. See ECF No. 58-1 at 20.

- On September 2, 2011, plaintiff had a physical. ECF No. 58-1 at 25. The physician noted that plaintiff requested a walking chrono and stated he was "able to do ADL's" and "climb stairs if needed." See id. at 24. The progress note states that there was no indication for a walking chrono. See id.

- During all relevant times, defendant Miranda worked as a physician assistant at High Desert State Prison (HDSP). Defendant's Statement of Undisputed Facts (DSUF) ¶¶ 3, 5.[5] Physician assistants work under the supervision of a physician and are permitted to perform many of the same functions as physicians. ECF No. 58-2, Exh. E at ¶ 5 (Declaration of Bonnie Lee, M.D.) ("Lee Declr.").

- Physician assistants, including defendant Miranda, are authorized to initiate, discontinue, and/or renew prescriptions, drugs, and medical devices, and may alter or discontinue orders previously made by other medical providers, including physicians, physician assistants, or other medical practitioners.[6] DSUF ¶¶ 14, 25.

- In his capacity as a physician assistant, defendant Miranda was responsible for screening inmates who had just arrived at HDSP to determine appropriate housing placement, order or recommend medical care for any immediate medical needs, and prescribe, change, or discontinue prescription medications and/or equipment as medically indicated. DSUF ¶ 5.

- On December 5, 2011, plaintiff was transferred from Folsom State Prison to High Desert State Prison. That evening, plaintiff saw defendant for intake at Receiving and Release at HDSP. DSUF ¶ 7.

- While at Folsom, plaintiff had been prescribed Gabapentin (Neurontin). When plaintiff met with defendant on December 5, 2011, plaintiff had a prescription for Gabapentin, and was in possession of a cane and back brace. DSUF ¶ 7.

- In 2011, Gabapentin was removed from the pharmacy drug formulary statewide, meaning that it was no longer on the approved list of medications for medical providers to prescribe. DSUF ¶ 8; Lee Declr. at ¶ 7. Specifically, effective May 2011, all

---

[5]  Where, as here, defendant's Undisputed Facts are supported by the submitted evidence, and not seriously contested by plaintiff, the court cites only to the relevant paragraph of defendant's Undisputed Facts.
[6]  Although plaintiff asserts that defendant lacked the authority to change his prescription, plaintiff has no evidence to support this allegation. Accordingly, the undersigned finds it undisputed that defendant Miranda was authorized to alter or discontinue plaintiff's pain medication.

prescriptions for Gabapentin required non-formulary approval, and were restricted to adjunctive therapy for partial complex seizures, post herpetic neuralgia, and objective evidence of severe disease.  DSUF ¶ 8; Lee Declr. at ¶ 7.  Therefore, medical providers were instructed to prescribe alternative medications to Gabapentin as medically indicated.  ECF No. 58-2, Exh. D at ¶ 5 (Declaration of A. Pomazal) ("Pomazal Declr.").

- Medical providers at HDSP, including defendant, were not authorized to prescribe Gabapentin except for exceptional conditions with prior Chief Physician and Surgeon non-formulary approval.  DSUF ¶ 8.  When a new inmate/patient arrived at HDSP with a current prescription for Gabapentin, medical providers typically tapered them off the Gabapentin and, per CDCR policy, prescribed alternative medication in lieu of Gabapentin, unless their condition met the criteria for which Gabapentin could be prescribed.  DSUF ¶ 8.

- On December 5, 2011, defendant reviewed plaintiff's prison medical records (UHR),[7] which noted a history of back pain and knee pain.[8]  DSUF ¶¶ 9, 10.  Defendant noted that plaintiff had previously been prescribed Gabapentin.  ECF No. 58-1, Exh. B at ¶ 11 (Declaration of R. Miranda) ("Miranda Declr.").

- Plaintiff's medical reconciliation form dated December 5, 2011 indicates that plaintiff had previously been prescribed Gabapentin 800 mg, two tablets to be taken twice daily, by Dr. Reddy at Folsom State Prison.  See ECF No. 58-1 at 29.  The form indicates that plaintiff's Gabapentin was "non-formulary approved" and valid through February 1, 2012.  Id.

- Defendant declares that on December 5, 2011, he observed plaintiff ambulate, sit, and stand, and plaintiff appeared to do so without problem.  Miranda Declr. at ¶ 10.  Plaintiff's gate was slow but stable; his lumbar spine was slightly tender at L5-S1 with some limited range of motion on waist flex; and his knees were normal without swelling or deformity.  Id.

- Defendant declares that previous imaging studies of plaintiff's lumbar spine noted some mild degenerative disc/joint disease and a bullet fragment in the paraspinal soft tissues near the L1 vertebral level.  Id.  According to defendant, mild degenerative disc/joint disease is very common in people plaintiff's age (over 65).  Miranda Declr. at ¶ 10.  In defendant's opinion, the imaging studies in plaintiff's medical file would not suggest severe pain or impairment in function (known as Activities of Daily Living (ADLs)).  Id.

---

[7]  Plaintiff's allegation that defendant "did not refer to plaintiff's health record" suggests that plaintiff disputes whether defendant reviewed his medical records on December 5, 2011.  See ECF No. 61 at 4.  However, plaintiff's allegation appears to be based solely on defendant's failure to prescribe Gabapentin.  See id.  As plaintiff's allegation that defendant did not review his files appears purely speculative, the undersigned finds it undisputed that defendant reviewed plaintiff's UHR on December 5, 2011.

[8]  In his opposition, plaintiff asserts that he never complained of knee pain.  However, a note in plaintiff's medical file dated March 28, 2011 indicates that plaintiff complained of knee pain on at least one occasion.  See ECF No. 62-1 at 3.

1
2
- Defendant declares that none of plaintiff's conditions met the criteria for which Gabapentin could be prescribed.  Miranda Declr. at ¶ 10.

3
4
5
- Defendant offered plaintiff Oxcarbazepine as a formulary alternative to Gabapentin,[9] but plaintiff refused.  DSUF at ¶ 10.  Therefore, defendant ordered Gabapentin to be tapered off.  In place of Gabapentin, defendant ordered Naproxen (Naprosyn) 500 mg twice per day and Acetaminophen (Tylenol) 325 mg three times per day as needed.  DSUF at ¶ 10.

6
7
- Also on December 5, 2011, defendant discontinued plaintiff's chrono for a cane and back brace.  DSUF at ¶ 10.  Defendant made plaintiff's bottom bunk chrono temporary and discontinued plaintiff's ground floor chrono.[10]  See ECF No. 58-1 at 32.

8
9
10
- Defendant declares that based on his review of plaintiff's medical records on December 5, 2011, and his observations and examination on that date, defendant's professional opinion was that a cane or back brace were not medically necessary for plaintiff.  Miranda Declr. at ¶ 11.

11
12
- In the prison system, medical providers are not permitted to order medical devices unless they are "medically necessary supported by objective medical evidence."  DSUF at ¶ 10.

13
14
- Defendant declares that the reason he discontinued plaintiff's cane and back brace was because it was his medical opinion that the cane and back brace were not medically necessary, and inmates are only permitted to have medical appliances which are medically necessary.  Miranda Declr. at ¶ 11.

15
16
17
- Defendant's notes from December 5, 2011 state, "[plaintiff] says he can walk without a cane, but uses it for support.  He also has a lumbar back support for support."  ECF No. 58-1 at 26.  Defendant also noted, "D/C back brace – not medical necessity."  Id.

18
19
20
- Also on December 5, 2011, defendant ordered x-rays of plaintiff's knees.[11]  DSUF at ¶ 10.  Defendant did not see previous imaging studies of plaintiff's knees in his medical chart, and defendant noted that plaintiff had previously complained of knee pain.  Miranda Declr. at ¶ 11.

21
////

22
23
24
25
26
27
28

[9]  Oxcarbazepine (Trileptal), like Gabapentin, is an anticonvulsant.  See https://www.nlm.nih.gov/medlineplus/druginfo/meds/a601245.html; https://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html.
[10]  Plaintiff's medical records indicate that defendant also discontinued plaintiff's chrono for a mobility vest.  See ECF No. 58-1 at 32.  However, plaintiff contends that he was never issued a mobility vest and did not have a vest when he arrived at HDSP.  See ECF No. 61 at 12.  To the extent the parties dispute whether plaintiff had a mobility vest, the undersigned finds that the dispute is not material.
[11]  The x-rays ordered by defendant were taken on December 15, 2011.  ECF No. 58-1 at 35.  The report notes the presence of a mild bone spur on the top of the knee cap.  Id.; Miranda Declr. at ¶ 11.  According to defendant, the x-rays of plaintiff's knees were "unremarkable."  Id.

- In addition, defendant noted plaintiff had a history of hypertension (high blood pressure) and ordered blood pressure medication, weekly blood checks, and a low salt diet for plaintiff. DSUF at ¶ 11.

- Plaintiff did not see defendant Miranda again after December 5, 2011. DSUF ¶ 6.

- On December 6, 2011, plaintiff submitted a healthcare appeal concerning his meeting with defendant on December 5, 2011.[12] ECF No. 58-2 at 36. Plaintiff's appeal was received on December 8, 2011 and assigned appeal log number HDSP HC 11025429. DSUF at ¶ 15.

- On December 13, 2011, Dr. Pomazal,[13] physician and surgeon at HDSP, interviewed and evaluated plaintiff in response to healthcare appeal log number HDSP HC 11025429. DSUF at ¶¶ 13, 15. Based on his interview of plaintiff and his review of plaintiff's medical records (UHR), Dr. Pomazal concluded that plaintiff's clinical findings did not support the level of pain claimed by plaintiff. Pomazal Declr at ¶6. According to Dr. Pomazal, plaintiff ambulated with no problems and there was no medical indication for medical necessity for a cane, back brace, or Gabapentin. Id. at ¶ 6. None of the three criteria for prescribing Gabapentin were present. Id. In Dr. Pomazal's professional medical opinion, a cane and back brace were not medically necessary for plaintiff. Id. Based on Dr. Pomazal's review of plaintiff's medical records, his training and experience, and acceptable standards of medical care to treat back pain, it is Dr. Pomazal's professional opinion that defendant's actions on December 5, 2011 were proper, consistent with community standards, and in accord with the best medical practices. Id. at ¶ 14.

- Also on December 13, 2011, plaintiff was removed from the Disability Placement Program. See ECF No. 58-1 at 34. The removal form is signed by defendant Miranda. The form states, "I/P turned in his vest and cane voluntarily."[14] See id.

---

[12]  In his appeal, plaintiff complained that defendant Miranda took his cane, back brace, and Gabapentin medication. See ECF No. 58-2 at 42-43. Plaintiff alleged that defendant said he was going to give plaintiff a weaker medication and was stopping plaintiff's Gabapentin prescription that was set to expire in February 2012. Plaintiff tried to explain to defendant that his prior doctor, Dr. Reddy, had attempted to wean plaintiff off of Gabapentin using a number of other medications, but none of them worked. Plaintiff told defendant that his case had been addressed by the Chief Medical Officer at Folsom State Prison, who re-ordered and re-approved plaintiff's Gabapentin prescription. Defendant refused to listen, and then took plaintiff's back brace, saying plaintiff did not have a chrono for it. Defendant also took plaintiff's cane. Plaintiff further alleged that defendant laughed and joked about it to Sergeant Bond, and said that plaintiff did not need the cane, was faking, and could walk just fine. Plaintiff alleged that at the time, he was in so much pain he could barely walk without his cane. Plaintiff further alleged that defendant said, "That's how we do it here at High Desert State Prison." Id.

[13]  Dr. Pomazal has been dismissed as a defendant in this action.

[14]  Plaintiff objects to this notation and contends that he did not turn in his cane voluntarily. It is clear from the court's review of the record that plaintiff turned in his cane only because defendant required him to do so. To the extent the parties dispute whether this act was "voluntary," the dispute is not material.

- Plaintiff's medical records indicate that on January 4, 2012, plaintiff saw Dr. Strome. ECF No. 58-1 at 43. Dr. Strome noted plaintiff's history of chronic neuropathic pain and DJD of the lumbar spine. See id. Dr. Strome's notes indicate that plaintiff agreed to a trial of Trileptal (Oxcarbazepine) for 14 days. See ECF No. 58-1 at 43. Dr. Strome wrote, "If no improvement, submit non-formulary for Gabapentin 1200 mg BID (pt's previous dose)." Id.

- On January 10, 2012, Dr. Lee, the Chief Physician and Surgeon at HDSP, responded to appeal log number HDSP HC 11025429 submitted by plaintiff concerning his December 5, 2011 meeting with defendant Miranda. Lee Declr. at ¶ 6.

- Based on Dr. Lee's review of the pertinent medical records, and her training and experience, it is Dr. Lee's professional opinion that defendant's actions on December 5, 2011 were proper, consistent with community standards, and in accord with the best medical practices. Lee Declr. at ¶ 8. In Dr. Lee's professional medical opinion, a cane and back brace were not medically necessary for plaintiff, and defendant's decision to taper plaintiff off Gabapentin and prescribe Naproxen 500 mg twice per day and Acetaminophen 325 mg three times per day as needed was appropriate.

- In February and March 2012, plaintiff saw Dr. Pomazal approximately five times. See Pomazal Declr. at ¶¶ 8-12. Dr. Pomazal's diagnosis of plaintiff was chronic back pain, mild degenerative joint disease of the lumbar spine and left shoulder, and hypertension. Id. at ¶ 8. Dr. Pomazal prescribed plaintiff Ibuprofen and physical therapy, and later Indocin. Id. at ¶¶ 8, 9. Plaintiff continued to complain of lumbar back pain, stopped taking Indocin, and demanded Gabapentin. Id. at ¶¶ 10, 11. As a result, Dr. Pomazal referred plaintiff's case to the pain management committee. Id. Dr. Pomazal declares that during this time, plaintiff walked slowly, but did not otherwise exhibit any abnormal musculoskeletal or neurological symptoms, and he was able to walk without a cane. Pomazal Declr. at ¶ 11. Based on Dr. Pomazal's own observations, clinical findings, and review of plaintiff's medical records (UHR), there was no medical indication of a medical necessity for a cane, back brace, or Gabapentin. Id. at ¶ 14.

- Plaintiff's medical records indicate that on May 30, 2012, plaintiff saw Dr. Abdur-Rehman for a chronic care follow up visit. ECF No. 58-1 at 74. Dr. Abdur-Rehman noted that plaintiff was "in no apparent distress but does appear to be somewhat uncomfortable" and that plaintiff had "some difficulty getting up on the examination table, as well as going from the sitting up to lying position and returning to the sitting up position." Id. The report also states:

> [T]he patient states he has been on no [pain] medication for the last several months. The patient has reportedly been tried on numerous medications, including Gabapentin, which is the only medication that helped with his pain. He has been on Tylenol with Codeine. He has been on morphine. He has been on nortriptyline, from which he had side effects. The patient states he was placed on oxcarbazepine but states that he did not get any pain relief. The patient states his pain is mostly constant and with certain movements he will get lightening-type pain in the lower back which radiates down to the lower extremities. The patient states no other

medications have been effective for him.  He states he is not looking for narcotics as he had side effects from the Tylenol with Codeine and could not tolerate the morphine.  The patient states the only medication he is currently getting is blood pressure medication, which he reportedly takes.

Id.  Dr. Abdur-Rehman wrote that he informed plaintiff that "there is a considerable range that can be tried on Oxcarbazepine before declaring it not being effective," and that he would restart plaintiff on an increased dose of Oxcarbazepine for plaintiff's neuropathic pain.  Id. at 75.

VI.    Plaintiff's Evidence

*Plaintiff's Verified Allegations*

- When plaintiff met with defendant on December 5, 2011, defendant took his cane, back brace, and Gabapentin medication "within two minutes."  ECF No. 11 at 15.

- Plaintiff's non-formulary prescription for Gabapentin was authorized by a pain committee and signed by Dr. Sahota, the Chief Physician and Surgeon at Folsom State Prison.  ECF No. 61 at 3.

- When plaintiff tried to explain to defendant that certain medications caused him side effects, defendant looked at plaintiff and said, "I can tell there ain't nothing wrong with you."  ECF No. 61 at 9, 11.

- Plaintiff tried to explain to defendant that plaintiff's stomach could not get used to "[o]xcarbazepine and other drugs."  ECF No. 61 at 9.

- "At one point [in] time after arriving at HDSP[,] plaintiff did in fact try Oxcarbazepine."  ECF No. 61 at 8.  Plaintiff then got very sick.  Id.

- "To this day, plaintiff has to take Gabapentin medication [to] ease the pain that plaintiff struggles with every day."  ECF No. 61 at 6.

- The medications plaintiff cannot tolerate include Oxcarbazepine, Carbamazepine, Codeine, Morphine, and Nortriptyline.[15]  ECF No. 61 at 4.

- Plaintiff did not turn in his cane to defendant voluntarily.  ECF No. 61 at 10.

- Without his cane, plaintiff has a difficult time ambulating.  ECF No. 61 at 9, 10.

- Plaintiff attempted to explain to defendant that he needed his cane to move around.  ECF No. 11 at 15.  Defendant responded, "This is High Desert State Prison, and this is how we do things here."  Id.

---

[15]  Plaintiff has evidence to support this allegation, cited below.  However, as will become clear, the relevance of this allegation depends on when it was discovered that plaintiff could not tolerate each medication.

15

- Plaintiff "made clear" to defendant on December 5, 2011 that his leg pain becomes "increasingly painful" as he walks.  ECF No. 61 at 7.  Defendant ignored plaintiff and instead took x-rays of plaintiff knees, despite plaintiff never complaining of his knees being in pain.  Id.

- Plaintiff repeatedly requested that defendant return his cane, but defendant laughed and told another officer that plaintiff was just faking his injuries.  ECF No. 61 at 11-12.  Defendant also made jokes about plaintiff's mobility impairments.  ECF No. 11 at 15.

- Plaintiff was issued a cane on the day he arrived at California Men's Colony (CMC) from HDSP, and plaintiff still uses a cane today.  ECF No. 61 at 9, 10.

- Plaintiff was "constantly in severe pain" for the 13 months plaintiff was housed at HDSP.  ECF No. 61 at 9.

*Medical Records and Health Care Appeals*[16]

- A Disability Placement Program Verification form dated February 24, 2010 indicates that plaintiff is "mobility impaired."  ECF No. 61 at 40.  On the same date, plaintiff was issued a comprehensive accommodation chrono for a cane, soft shoes, and a bottom bunk.  ECF No. 61 at 41.  The chrono indicates that plaintiff should avoid heavy lifting, bending, and stooping.  See id.

- On April 10, 2011, plaintiff filed a health care appeal at Folsom State Prison ("Folsom"), which was assigned appeal log number FSP HC 11006611.  ECF No. 11 at 42.  The first level response to plaintiff's appeal, dated June 5, 2011, summarized plaintiff's issues as follows:

> [Y]ou state that in 2008 you were prescribed gabapentin by a specialist for severe back pain for a bulging disc and degenerative changes involving the sacroiliac joints bilaterally and a bullet in your spine.  The gabapentin was effective in controlling your pain until Dr. Reddy informed you that you would be taken off gabapentin and placed on nortriptyline.  You have tried nortriptyline before and it was ineffective.  You are in severe pain without gabapentin.  You request that the Chief Medical Officer (CMO) approve the order for gabapentin to control severe back pain.

> Id.

////

---

[16]  In addition to medical records and health care appeals, plaintiff also provided the declaration of Vincent Cofield, an inmate who was allegedly incarcerated at High Desert State Prison in 2012.  Mr. Cofield declares that on March 28, 2012, defendant Miranda confiscated his "medically necessary" cane and asthma inhalers.  See ECF No. 61 at 50-51.  The court has reviewed Mr. Cofield's declaration and finds that it does not bear on the issue raised in the instant motion for summary judgment, i.e. whether defendant Miranda was deliberately indifferent to plaintiff Jenkins' serious medical needs.

16

The first level response indicates that on May 11, 2011, plaintiff met with Dr. Reddy, who evaluated plaintiff's history and current status, discussed pain goals with plaintiff, and reordered Gabapentin. The appeal signed by Dr. Sahota, Chief Physician and Surgeon at Folsom, granted plaintiff's appeal at the first level of review. Id.

- Prior to receiving the first level response to his April 10, 2011 appeal, plaintiff filed another health care appeal concerning his request for Gabapentin, which was assigned appeal log number FSP HC 11006687. ECF No. 61 at 14. On June 20, 2011, plaintiff received a first level response to this appeal, also signed by Dr. Sahota. In the appeal response, plaintiff's issues are summarized as follows:

> [Y]ou indicated that in 2008 you saw an outside specialist, Dr. Stevig, for your chronic back pain and nerve problem. A magnetic resonance imaging (MRI) test was done and the doctor ordered Gabapentin for your pain. The medication was effective to control your pain for three years until it was recently discontinued by Dr. Reddy. Other medications such as codeine, nortriptyline, and morphine were ineffective and cause unwelcome side effects. Your pain is non-stop and severe since stopping the Gabapentin. You have a bullet in your back and near your spine that has been there 34 years. You request to have the Gabapentin resumed and surgery to be performed to replace the troublesome disk.

Id. Under "action requested," the appeal response states, "to receive back surgery to replace the worn out disk in your back to alleviate your chronic back pain" and "to be prescribed Gabapentin as it is the only pain medication you have received that controls your pain." Id. Plaintiff's request for back surgery was denied, but his request for Gabapentin was granted. Id. The response states:

> Dr. Reddy reports that you saw Dr. Williams, Physical Medicine and Rehabilitation Consultant, on 5/6/11 after filing your appeal. You were subsequently approved for Neurontin (Gabapentin) non-formulary for 90 days. Pain goals were discussed with you. You told Dr. Reddy that you can walk 100 yards without stopping with a cane, and you can climb and descend stairs up to the third tier without a cane if needed. You are currently taking Neurontin and ibuprofen for pain. There is no indication for back surgery at this time. Dr. Reddy continued you on physical therapy. At the First Level of Review this appeal was Partially Granted. A review of your appeal with attachment(s), Unit Health Record (UHR), and all pertinent departmental policies were reviewed.

Id.

- On April 21, 2011, plaintiff was issued a comprehensive accommodation chrono for a back brace. See ECF No. 11 at 56.

- In January 2013, plaintiff was transferred from HDSP to California Men's Colony (CMC) in January 2013. See ECF No. 61 at 33. On January 29, 2013, Dr. Guiang, a physician at CMC, issued plaintiff a chrono for a cane and a bottom bunk. Id. The chrono indicates that plaintiff was able to climb up to six stairs but not an entire flight of stairs, and that

plaintiff should not bend, stoop, twist, or crawl; lift more than 15 pounds; or work at heights. Id. On the same date, Dr. Guiang prescribed plaintiff Carbamazepine. ECF No. 61 at 43.

- On January 14, 2013, Dr. Guiang submitted a request for plaintiff to have an initial consultation with Dr. Griffin. ECF No. 47 at 14. Dr. Guiang described plaintiff's clinical situation as follows:

> 57 year old new arrival with chronic low back pain due to DDD of LS spine and GSW with bullet lodged in the spine; cannot tolerate codeine, morphine, elavil, nortriptyline, oxcarbazepine; went on a hunger strike 2 months ago gabapentin was discontinued (only meds that work); patient claimed that he was transferred to CMC because he refused to see all doctors at high Desert and filed a lawsuit and ongoing trial; Patient had physical therapy.

Id.

- On March 4, 2013, plaintiff had a consultation with Dr. Griffin. ECF No. 47 at 12. Dr. Griffin's report stated:

> [Plaintiff] has had difficulty at another institution called High Desert with medication access that relieved his symptoms. Opioids caused nausea and GI upset. He has similar issues with tricyclic antidepressants. Oxcarbazepine and recently Tegretol[17] were also not helpful for his low back pain. He states gabapentin has been helpful in the past. In fact, he went on a hunger strike when he was taken off his medication and lost by his report 55 pounds.

Id. Dr. Griffin recommended a "physical therapy functional evaluation off the medication and then possibly physical therapy evaluation while on gabapentin, which appears to be the only medicine [plaintiff] can tolerate that was helpful for his symptoms." Id. at 13.

- On April 3, 2013, Dr. Taylor submitted physician's orders for Gabapentin for 30 days pending pain committee approval. ECF No. 61 at 31. The corresponding non-formulary drug request lists plaintiff's "indications" as "neurogenic claudication, spinal stenosis" and states that NSAIDs, Tylenol #3, and morphine were not effective. Id. at 62. It appears that the request for Gabapentin was granted, see id. at 62-63, and that plaintiff's Gabapentin prescription was thereafter renewed, see id. at 17, 26-28, 36, 38. As of March 2015, plaintiff was still taking Gabapentin. See ECF No. 61 at 18.

- On July 30, 2014, plaintiff's request for a back brace was denied by the Chief Physician and Surgeon of CMC. See ECF No. 61 at 36.

- As of March 10, 2015, plaintiff was wearing a back brace. See ECF No. 61 at 18-19. Plaintiff's diagnosis on this date was "lumbar stenosis, congenital, with degenerative disk disease and neurogenic claudication. Neurologically stable." Id. The report indicates that

---

[17] Tegretol (Carbamazepine) is an anticonvulsant. See https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682237.html.

1  plaintiff is a candidate for a "minimally invasive L3/4/5 laminectomy on an elective
2  basis."[18]  Id.

3  VII.    Discussion

4  It is undisputed that, at all times relevant to this action, plaintiff's chronic back pain and

5  degenerative disk disease were "serious medical needs" within the meaning of the Eighth

6  Amendment.  See McGuckin, 974 F.2d at 1059-60.  At issue is whether defendant was

7  deliberately indifferent to plaintiff's serious medical needs when he changed plaintiff's pain

8  medication (Gabapentin) and discontinued plaintiff's cane and back brace on December 5, 2011.

9  A.   Gabapentin Medication

10  Defendant's evidence establishes that when defendant met with plaintiff on December 5,

11  2011, prescriptions for Gabapentin required non-formulary approval and were limited to

12  adjunctive therapy for partial complex seizures, post herpetic neuralgia, and objective evidence of

13  severe disease.  On December 5, 2011, defendant reviewed plaintiff's medical file, observed

14  plaintiff, and determined that in his professional medical opinion, plaintiff did not meet any of the

15  conditions for which non-formulary Gabapentin could be prescribed.  Defendant offered plaintiff

16  Oxcarbazepine as a formulary alternative to Gabapentin, but plaintiff refused.  Accordingly,

17  defendant tapered off plaintiff's Gabapentin, and prescribed Naproxen and Acetaminophen in its

18  place.  Defendant's actions were within his authority as a physician assistant, and his decisions

19  are supported by the declarations of Dr. Pomazal and Dr. Lee, who both opine that defendant's

20  actions were medically appropriate and in accord with the best medical practices.  This evidence

21  supports defendant's argument that his treatment of plaintiff was medically acceptable under the

22  circumstances, and defendant has met his initial burden of demonstrating an absence of evidence

23  to support plaintiff's claim that defendant was deliberately indifferent to plaintiff's chronic back

24  pain.  Accordingly, the burden shifts to plaintiff as the non-moving party to establish that a

25  "genuine issue as to any material fact actually does exist."

26  ////

27

28  [18]  A laminectomy appears to be a type of back surgery.

Construed in plaintiff's favor, plaintiff's evidence establishes that he was prescribed non-formulary Gabapentin in 2011 because Nortriptyline, Codeine, and Morphine caused side effects or were ineffective.  When plaintiff arrived at High Desert State Prison on December 5, 2011, he had a current "non-formulary approved prescription" for Gabapentin approved by Dr. Sahota, the Chief Physician and Surgeon at Folsom State Prison.  In January 2012, plaintiff agreed to a 14-day trial of Oxcarbazepine and "got very sick."  In May 2012, plaintiff was prescribed an increased dose of Oxcarbazepine, which was ineffective.  In January 2013, plaintiff was transferred to California Men's Colony (CMC) where he was prescribed Carbamazepine, which was also ineffective.  In April 2013, plaintiff was prescribed non-formulary Gabapentin, "the only medicine plaintiff can tolerate that [is] helpful for his symptoms."  See ECF No. 47 at 12.  Plaintiff thereafter remained on Gabapentin.

Plaintiff initially argues that defendant should not have discontinued his Gabapentin prescription because he had the requisite approval for non-formulary Gabapentin.  However, even assuming that plaintiff was eligible to receive Gabapentin based on prior non-formulary approval from Dr. Sahota, this does not without more indicate that defendant acted with deliberate indifference by changing plaintiff's medication.  To the extent defendant came to a different conclusion, through the exercise of his medical judgment, regarding the appropriate medication for treatment of plaintiff's chronic pain, defendant was not obligated to provide plaintiff with the same medication he received at Folsom State Prison.  See Snow, 681 F.3d at 987 (a difference of opinion between medical professionals concerning what medical care is appropriate does not without more amount to deliberate indifference).  While plaintiff may have disagreed with defendant's decision to change plaintiff's pain medication, this disagreement is insufficient to support a claim of deliberate indifference.  See id.

The court is sympathetic to plaintiff's frustration regarding the change in his pain medication, considering that plaintiff tried several different medications in 2012 and 2013 before finally being placed back on Gabapentin.  However, in the instant case, plaintiff's Eighth Amendment claim turns on defendant Miranda's state of mind on December 5, 2011.  In order to survive summary judgment, plaintiff must come forward with evidence that defendant

20

1  consciously disregarded an excessive risk to plaintiff's health when he offered to prescribe

2  Oxcarbazepine in lieu of Gabapentin for treatment of plaintiff's chronic back pain.

3        It is clear from plaintiff's evidence that when plaintiff eventually tried Oxcarbazepine on

4  another physician's recommendation, it caused side effects or was otherwise ineffective.  The

5  problem is that there is no evidence defendant knew on December 5, 2011 that Oxcarbazepine

6  would be ineffective.  According to the records submitted by the parties, plaintiff did not try

7  Oxcarbazepine until January 4, 2012, almost one month after his meeting with defendant.  See

8  ECF No. 58-1 at 43.  Thus, while it turned out that plaintiff was not able to tolerate

9  Oxcarbazepine, this information was not available to defendant on December 5, 2011 and could

10  not have put him on notice that Oxcarbazepine would not effectively treat plaintiff's pain.

11  Accordingly, to the extent plaintiff contends that defendant offered to prescribe Oxcarbazepine

12  knowing that it would be ineffective, plaintiff's argument is not supported by the record.

13        In an apparent attempt to cure this deficiency, plaintiff asserts that he told defendant on

14  December 5, 2011 that he was prescribed Gabapentin because other medications caused him side

15  effects or were otherwise ineffective.  Plaintiff lists the medications he cannot tolerate as

16  Oxcarbazepine, Carbamazepine, Codeine, Morphine, and Nortriptyline, and specifically asserts

17  that he told defendant "Oxcarbazepine and other drugs" caused problems.  In light of plaintiff's

18  admission that he tried Oxcarbazepine *after* he arrived at High Desert State Prison,[19] the court has

19  serious doubts as to whether plaintiff knew or told defendant on December 5, 2011 that

20  Oxcarbazepine (as opposed to Codeine, Morphine, or Nortriptyline) would be ineffective.[20]

21  However, on summary judgment, the court takes plaintiff's allegations as true.  But even

22  assuming that plaintiff told defendant that Oxcarbazepine would be ineffective, this does not

23

24  [19]  In his verified opposition, plaintiff states, "At one point [in] time *after* arriving at HDSP
25  plaintiff did in fact try Oxcarbazepine.  Plaintiff then got very sick."  ECF No. 61 at 8 (emphasis
    added).

26  [20]  Plaintiff's health appeals from Folsom State Prison support his claim that it was known on
27  December 5, 2011 that plaintiff could not tolerate Codeine, Morphine, or Nortriptyline.  Although
    it is not clear whether these health care appeals were included in the medical records defendant
    reviewed on December 5, 2011, this uncertainty does not affect the court's analysis as defendant
28  did not offer to replace plaintiff's Gabapentin with Codeine, Morphine, or Nortriptyline.

1   suggest that defendant acted with deliberate indifference by disregarding plaintiff's warning, as

2   plaintiff's statement with respect to Oxcarbazepine was not supported by his medical file at the

3   time.  Accordingly, plaintiff's allegation that he told defendant Oxcarbazepine would be

4   ineffective does not create a material dispute of fact as to whether defendant consciously

5   disregarded a risk to plaintiff's health when he offered to prescribe Oxcarbazepine in lieu of

6   Gabapentin on December 5, 2011.

7           On this record, a trier of fact could not reasonably conclude that defendant acted with

8   deliberate indifference when he prescribed plaintiff Naproxen and Acetaminophen after plaintiff

9   refused his initial offer of Oxcarbazepine for treatment of plaintiff's chronic back pain.  At the

10  time, defendant had no reason to believe that Oxcarbazepine would not be an effective medication

11  for plaintiff.  Even if plaintiff could show that defendant was negligent in offering to prescribe

12  Oxcarbazepine, negligence or malpractice does not violate the Eighth Amendment.  See Estelle,

13  429 U.S. at 105–06; Toguchi, 391 F.3d at 1059.  Because there is no evidence defendant acted

14  with deliberate indifference by changing plaintiff's pain medication, defendant is entitled to

15  summary judgment on this claim.

16          B.  Medical Devices

17          Defendant's evidence establishes that on December 5, 2011, defendant observed plaintiff

18  ambulate, sit, and stand, and, in defendant's opinion, plaintiff appeared to do so without

19  problems.  Plaintiff's gait was slow but stable, his lumbar spine was slightly tender with some

20  limited range of motion on waist flex, and his knees were normal without swelling or deformity.

21  Defendant reviewed imaging studies of plaintiff's lumbar spine, which in defendant's opinion did

22  not suggest severe pain or impairment in function.  Based on defendant's review of plaintiff's

23  medical file and his observations of plaintiff, it was defendant's professional medical opinion that

24  a cane and back brace were not medically necessary for plaintiff.  Defendant's determination is

25  supported by the declaration of Dr. Pomazal, who evaluated plaintiff approximately one week

26  later on December 13, 2011 and also determined that, in his medical opinion, a cane and back

27  brace were not medically necessary for plaintiff.  Defendant's decision to discontinue the chrono

28  for plaintiff's cane and back brace is supported by the declarations of Dr. Pomazal or Dr. Lee,

22

1    who both opine that defendant's actions were medically appropriate and in accord with the best

2    medical practices.

3           Plaintiff's evidence establishes that during his time at Folsom State Prison, he was issued

4    a chrono for a cane, back brace, and bottom bunk and was part of the Disability Placement

5    Program because of his mobility impairment.  When plaintiff arrived at High Desert State prison,

6    defendant discontinued his chrono for a cane, back brace, and ground floor cell; made plaintiff's

7    bottom bunk chrono temporary; and removed plaintiff from the disability program.  When

8    plaintiff was transferred to California Men's Colony (CMC) in January 2013, plaintiff was issued

9    a chrono for a cane and bottom bunk.  Plaintiff later requested a back brace, but the request was

10   denied in July 2014.  However, in 2015, plaintiff was using a back brace and was a candidate for

11   minimally invasive back surgery.

12          In his opposition to summary judgment, plaintiff emphasizes that he was issued a cane on

13   the day he arrived at CMC.  However, that plaintiff was provided a cane at some prisons but not

14   others demonstrates only a difference of opinion between medical professionals, which is

15   insufficient as a matter of law to establish deliberate indifference.  See Snow, 681 F.3d at 987 (a

16   difference of opinion between medical professionals concerning what medical care is appropriate

17   does not without more amount to deliberate indifference).  As a result, plaintiff's chronos for

18   medical devices at Folsom and CMC do not create a triable issue of fact regarding whether

19   defendant was deliberately indifferent to plaintiff's medical needs on December 5, 2011.

20          In the instant case, plaintiff's claim is predicated on a difference of opinion between

21   medical professionals, and between plaintiff and defendant, regarding whether plaintiff's

22   condition warranted any of the medical device chronos that defendant Miranda discontinued.

23   While plaintiff asserts that he told defendant that he needed a cane and that his leg becomes

24   "increasingly painful" as he walks, defendant determined as a matter of professional judgment

25   that a cane and back brace were not medically necessary.  Defendant's determination is further

26   supported by Dr. Pomazal's medical opinion reaching the same conclusion, a September 2, 2011

27   notation in plaintiff's medical file indicating that plaintiff was "able to do ADL's" and could

28   climb stairs as needed, and plaintiff's statement on December 5, 2011 that he was able to walk

1    without a cane but uses the cane for support.  While it is unfortunate that defendant made rude

2    comments to plaintiff during and immediately following their meeting, plaintiff has no evidence

3    to suggest that defendant's decision to discontinue plaintiff's cane and back brace was medically

4    unacceptable under the circumstances.  See Jackson, 90 F.3d at 332.  Accordingly, defendant

5    should be granted summary judgment on this claim.[21]

6         VIII.    Conclusion

7         In accordance with the above, IT IS HEREBY RECOMMEDED that defendant's motion

8    for summary judgment (ECF No. 58) be granted.

9         These findings and recommendations are submitted to the United States District Judge

10    assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11    after being served with these findings and recommendations, any party may file written

12    objections with the court, which shall be captioned "Objections to Magistrate Judge's Findings

13    and Recommendations."  **Due to exigencies in the court's calendar, no extensions of time will**

14    **be granted.**  A copy of any objections filed with the court shall also be served on all parties.  The

15    parties are advised that failure to file objections within the specified time may waive the right to

16    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17    DATED: March 4, 2016

18                     _Allison Claire_

19                     ALLISON CLAIRE
                    UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

---

[21]   Because the undersigned finds that defendant was not deliberately indifferent to plaintiff's serious medical needs, the court does not reach defendant's qualified immunity argument.

24